IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD L. KINCHION,
    Plaintiff,

vs.

CESSNA AIRCRAFT COMPANY and
FMR CORP. d/b/a FIDELITY BENEFITS
SERVICE CENTER,
    Defendants.

Case No. 07-1134-JTM

**MEMORANDUM AND ORDER**

Ronald Kinchion, plaintiff, is employed at Cessna Aircraft Company, defendant, as a small parts finish sprayer. Pursuant to injuries affecting Kinchion's employment at Cessna, he exhausted his administrative remedies under the Americans with Disabilities Act ("ADA") and the Kansas Act Against Discrimination ("KAAD") and was given a right-to-sue letter from the Equal Employment Opportunity Commission. Kinchion brought suit against Cessna alleging that Cessna: a) failed to reasonably accommodate his disability, under the ADA, 42 U.S.C. § 12101, and the KAAD, Kan. Stat. Ann. § 44-1001; b) discriminated against him due to his disability through adverse employment actions including discharge, under the ADA and the KAAD; c) wrongfully discharged him when he refused a worker's compensation settlement and sought legal counsel in the worker's compensation claim; d) interfered with his rights under the Family and Medical Leave Act ("FMLA") by not accommodating his disability; and e) along with FMR Corp., interfered with his recovery of benefits from a short term disability plan under

ERISA.  In response, Cessna submitted a 12(b)(6) motion to dismiss claims a) through d), leaving claim e) for future resolution.  For the following reasons, the motion to dismiss is granted in part and denied in part.

Cessna is self-insured under Kansas workers' compensation laws and contracts with Broadspire Services, Inc. to handle workers' compensation claims.  Cessna also operates a Health Services Department which coordinates, evaluates, and supervises the treatment of workers' compensation claims made by its employees.  This department advises work restrictions for injured employees planning to return to work.

Kinchion has been employed with Cessna since 1997.  On August 5, 2004, he informed Cessna Health Services of a ganglion cyst on his right wrist.  Kinchion's right wrist, right trigger thumb, and third finger were also later diagnosed with carpal tunnel syndrome.  By April 21, 2005, David T. Gwyn, MD, surgically removed the cyst and performed a CTS release on Kinchion's right wrist.  Following surgery, Kinchion "suffered from numbness and tingling and lacked full extension of his middle finger." Dkt. 1 at ¶ 16.  Cessna Health Services then upgraded Kinchion's work status after surgery from modified duty to regular duty and sought to recheck him in six weeks.  By August 23, 2005, Jeanne Barcelo, MD, of Cessna Health Services, released Kinchion from treatment with no work restrictions.  Kinchion then enrolled in a short term disability insurance plan, through payroll deductions, covering the period from August 30, 2005, until August 29, 2006.

In response to his workers' compensation claim, Robin Hladik of Broadspire offered $4,490 as a proposed settlement on September 16, 2005.  She based the settlement on the finding that he had a five percent right forearm impairment and advised him that his settlement would be

reduced by twenty-five percent if he sought legal counsel. Next, Kinchion retained the legal services of Roger Reidmiller who sent a workers' compensation written claim for compensation to Cessna. Kinchion also saw Pedro Murati, MD, at Reidmiller's request. Pursuant to Dr. Murati's examination, Dr. Barcelo implemented Dr. Murati's proposed work restrictions and put Kinchion back on modified duty as of December 13, 2005. Cessna Health Services then had Kinchion perform a Functional Capacity Evaluation ("FCE") which found that his "Motion and strength all appear to be within normal limits for his age/sex. " Dkt. No. 1 at ¶ 27. On January 12, 2006, Dr. Barcelo reviewed the FCE and determined that Kinchion's permanent restrictions were not substantial enough to prevent him from performing his job duties as a spray painter.

Next, Kinchion was authorized to work with "light-medium mixed limitations" after executing a " 'Return to Work Agreement for employees with Temporary Limitations' " with Cessna Health Services. Dkt. No. 1 at ¶ 29. Later, on February 21, 2006, Kinchion met with Dr. Barcelo, Penny Gilbert (a Cessna Human Resources representative), and Bob Hiebert (Second Shift Superintendent). At this meeting, Dr. Barcelo reversed her earlier decision and concluded that Kinchion's restrictions exceeded the functions of his job. Gilbert then put Kinchion on a leave of absence without pay because of his work restrictions and allegedly denied him disability.

While on leave, Kinchion received $373.00 per week in unemployment benefits from the Kansas Department of Labor, effective February 21, 2006. A Kansas workers' compensation administrative law judge also ordered Cessna to pay Kinchion temporary partial disability payments when his unemployment benefits ended on April 14, 2006. By May 16, 2006, he began receiving $449.00 per week in temporary partial disability payments, effective April 15, 2006.

On June 15, 2006, Kinchion underwent CTS release surgery on his right hand and sought physical therapy for tendinitis in his right shoulder from Cessna Health Services. By August 28, 2006, his disability payments ended and shortly thereafter, on August 30, 2006, John P. Estivo, DO, who performed the recent surgery, released him for work with no restrictions. Following the release, Kinchion attempted to return to employment, but Cessna Health Services did not permit his return until October 1, 2006, after he had completed another FCE. As a result, Kinchion again received unemployment benefits from September 4, 2006, until September 9, 2006. On September 11, 2006, Cessna further informed him that he had exhausted his 12 weeks of leave under the FMLA. After returning to work, a Kansas workers' compensation administrative law judge awarded Kinchion an amount exceeding the proposed settlement offer by Broadspire and found a "16% permanent partial impairment." Dkt. No. 1 at ¶ 48.

By February 2, 2007, Kinchion was diagnosed with diabetes and requested FMLA leave. However, Kinchion's requested leave to attend medical appointments was denied. Cessna determined that he was ineligible, having worked only 532 hours in the past 12 months.

A 12(b)(6) motion for failure to state a claim for which relief can be granted may be overcome by an "exceedingly low" threshold showing in the complaint. *Home Quest Mortg., L.L.C.*, 393 F. Supp. 2d at 1098 (quoting *Quality Foods v. Latin Am. Agribusiness Dev.,* 711 F.2d 989, 995 (11th Cir. 1983)). The threshold is low because the issue being tested is whether counsel can present evidence to support the claim, regardless of whether the claim will eventually be successful. *See id.* (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002)). When considering the motion, all well-pleaded factual allegations in the complaint are accepted

as true and viewed in the light most favorable to the nonmoving party. *Sutton v. Utah St. Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

A 12(b)(6) motion will be granted if there are no facts which would support a plaintiff's claim sufficient to justify providing relief. *See Home Quest Mortg., L.L.C.*, 393 F. Supp. 2d at 1097-1098 (citing *Poole v. Co. of Otero,* 271 F.3d 955, 957 (10th Cir. 2001) (originally citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *see also Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) (limiting "no set of facts" language of *Conley*). A 12(b)(6) motion will also be granted when an issue of law is well settled. *Id.* at 1098 (citing *Neitzke v. Williams,* 490 U.S. 319, 326 (1989)).

The first claims to consider are Kinchion's ADA and KAAD claims, which stipulate that Cessna failed to accommodate his disability and discriminated against him because of his disability. 42 U.S.C. § 12112(a) prevents a "covered entity" from discriminating against a "qualified individual with a disability because of the disability" with respect to employment. The same standards and burdens applied to an ADA claim are also applied to a KAAD claim. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir. 1997). Furthermore, for a plaintiff to be entitled to relief under an ADA claim, the plaintiff must show that:

> (1) she [or he] is a disabled person within the meaning of the ADA;
> (2) she [or he] is qualified to perform the essential functions of the job, with or without accommodation; and
> (3) the employer terminated her [or his] employment under circumstances which give rise to an inference that the termination was based on her [or his] disability.

*Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 878 (10th Cir. 2004). Under the ADA, a disability to an individual is defined as: "(A) a physical or mental impairment that substantially

5

limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Cessna contends that Kinchion has failed to allege facts sufficient to show that he has a disability as defined by the ADA because his complaint lacks allegations that would show his impairment substantially limits a major life activity. Kinchion concedes that the lifting, reaching, and working restrictions imposed on him by Dr. Murati usually would not permit an ADA claim, under subsection (A) above. In support, Kinchion cites *Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1206 (D. Kan. 2002), in which the court held that a seventy-five pound lifting restriction would not substantially limit the life activity of lifting, based on precedent that a forty-pound lifting restriction did not as a matter of law. However, Kinchion claims his case should not be dismissed because Cessna employees regarded him as having an impairment that substantially limited the major life activity of working, thus satisfying 42 U.S.C. § 12102(2)(C).

The Tenth Circuit Court has found three ways under 42 U.S.C. § 12102(2)(C) in which an individual may be regarded as disabled:

> (1) the individual: '[h]as a physical or mental impairment that does not substantially limit major life activities but is treated . . . as constituting such limitation;'
> (2) the individual '[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;' or
> (3) the individual '[h]as none of the impairments defined in [29 C.F.R. § 1630.2(h)(1) and (2)] but is treated . . . as having a substantially limiting impairment.'

*Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 903 (10th Cir. 1997) (quoting 29 C.F.R. § 1630.2(l)(1)-(3)). Therefore, the court is looking at the impact that the impairment or the perceived impairment has on the attitudes of others. *Id.* More specifically, the focus of the

inquiry is whether the employer perceives the employee's impairment as "foreclosing generally the type of employment involved" as opposed to merely making the employee "incapable of performing a particular job." *Id.* at 904.  Thus, Kinchion must show that Cessna regarded him as substantially limited "in performing either a class of jobs or a broad range of jobs in various classes." *See Id.*

Even construing the facts liberally and viewing them in a light favorable to the plaintiff, the court still does not find that Kinchion has, or can, sufficiently plead that he was disabled.  His complaint fails to show that  Cessna regarded his impairment as "foreclosing generally the type of employment" he was involved in.  Kinchion initially was allowed to work with restrictions or in modified duties and was later given a leave of absence based on his disability.  He was given the leave of absence because Cessna could not accommodate his restrictions which were too great for his job as a small parts finish painter.  This reveals that Cessna attempted to accommodate his disability, but eventually discovered that he was "incapable of performing a particular job."  At the most, Kinchion's complaint reveals that Cessna regarded his carpal tunnel syndrome as a disability in performing a very narrow range of finish painting jobs at Cessna, and not, for instance, a broad range of general painting jobs. *See e.g. id.* at 905 (finding that plaintiffs must compare themselves to the class of all pilot positions at all airlines, not just the narrow class of "global airline pilot"), *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (determining that plaintiff was prevented from working a narrow range of meatpacking jobs due to his carpal tunnel syndrome).  Kinchion was even able to return to work with no restrictions after his leave of absence.

Kinchion is unable to show that he was disabled under ADA guidelines. Since his first two claims of failure to accommodate and disability under the ADA and KAAD require that he show disability, these claims necessarily cannot survive a motion to dismiss. The court grants Cessna's motion to dismiss on Kinchion's first two claims.

Kinchion next alleges that he was wrongfully discharged in retaliation for filing a workers' compensation claim. To establish a prima facie case of retaliatory discharge, Kinchion must show:

> (1) that he filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such benefits;
> (2) that the employer had knowledge of the compensation claim or the fact that he sustained a work-related injury for which the plaintiff might file a future claim for benefits;
> (3) that the employer terminated the plaintiff's employment; and
> (4) that a causal connection existed between the protected activity or injury and the termination.

*Sanjuan v. IBP, Inc.*, 270 F.3d 1290, 1294 (10th Cir. 2002). Making this prima facie showing allows the burden to shift to the employer who must then provide "an articulate, non-retaliatory reason for the discharge." *Id.* (internal quotation marks omitted) (quoting *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir. 2001)).

The element of the prima facie showing that Cessna disputes is that Kinchion was terminated. Cessna asserts that without a showing that he was terminated, Kinchion cannot make out a prima facie case of wrongful discharge. Kinchion counters that Cessna's view of retaliatory discharge is too narrow and that Cessna should not be permitted to accomplish what the law prohibits by labeling its actions as a leave of absence without pay, instead of termination. Kinchion concludes that Cessna might have had a valid argument if it would have started the

disability payments immediately upon leave, but as it stands, Cessna has sidestepped nearly three months of payments.

Cessna offers numerous facts in support of its position. Cessna asserts that Kinchion's receipt of unemployment benefits does not equate to a per se finding of termination because people who are still employed may receive these benefits under Kansas law. Cessna also describes how Kinchion received disability payments, was given physical therapy by Cessna Health Services while on leave, was notified that his leave was FMLA leave, and was able to return to work without going through the formal application process required of new employees.

Despite Cessna's factual allegations that Kinchion was not terminated, the court finds that Kinchion has made a prima facie showing that he was terminated such that his wrongful discharge claim may proceed. Kinchion was placed on leave of absence on February 21, 2006 and was unable to return to work until October 1, 2006. Kinchion alleges that he was told he was ineligible to receive disability payments when given his leave of absence. Instead of immediately receiving the benefits of the disability plan in which he was enrolled, he was forced to seek unemployment compensation. Eventually, he was able to receive his entitled disability payments only through a court order. For over seven months, Kinchion did not work for Cessna and did not receive a paycheck. If the court were to rule otherwise, that Kinchion had not been terminated, it would allow employers to terminate employees by merely placing them on indefinite leaves of absence without pay. Employers would be afforded unlimited protection from wrongful discharge liability at the expense of their employees. Thus, the court denies Cessna's motion to dismiss, finding that Kinchion has made a prima facie showing of wrongful discharge.

The final claim to consider is that Cessna interfered with Kinchion's rights under the FMLA when they failed to accommodate for his disability. A prima facie showing for this claim requires that Kinchion show: "(1) that he [or she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his [or her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). Furthermore, to be eligible for FMLA leave, the employee must have worked a minimum of 1,250 hours of service over the past twelve months. *Sutherland v. Goodyear Tire & Rubber Co.*, 446 F. Supp. 2d 1203, 1209 (D. Kan. 2006) (citing 29 C.F.R. § 825.110(a)(2)). However, time spent on leave, whether paid or not, may not be counted towards the 1,250 hours of service requirement. *Wells*, 219 F. Supp. 2d at 1207.

Kinchion claims that Cessna's action in terminating his employment due to his disability and preventing him from accumulating the necessary 1,250 required service hours, interfered with his entitlement to take FMLA leave to treat his recent diabetes diagnosis. Kinchion presents a new theory of interference under the FMLA, but one that is not supported by the law. Although Kinchion has sufficiently pleaded a wrongful discharge claim, *Wells* reaffirmed that Kinchion's unpaid leave of absence may not be counted toward the service requirement. Additionally, it would be speculative for the court to credit Kinchion with the hours of service lost during his leave of absence without pay, even if he was ultimately successful on his wrongful discharge claim. Thus, Kinchion's reported 532 hours of service in the past twelve months falls short of the 1,250 hour requirement, and prevents him from meeting the first element of the prima facie

case in *Metzler*.  Kinchion has not shown that he was entitled to FMLA leave when Cessna denied his claim in February of 2007.

Based on the court's findings, Cessna's 12(b)(6) motion to dismiss is granted with respect to Kinchion's ADA and KAAD disability claims of failure to accommodate and discrimination. Cessna's motion to dismiss is also granted with respect to Kinchion's FMLA interference claim. However, Cessna's motion to dismiss Kinchion's wrongful discharge claim is denied.

IT IS ACCORDINGLY ORDERED this 14th day of August, 2007, that the Motion to Dismiss of defendant Cessna Aircraft Company (Dkt. No. 7) is hereby GRANTED IN PART AND DENIED IN PART.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE
